TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
MATTHEW D. EVANS
Assistant United States Attorney
U.S. Attorney's Office for the District of Minnesota
300 South Fourth Street, Suite 600
Minneapolis, MN  55415
Tel: (612) 664-5642
Email: Matthew.Evans@usdoj.gov

JASON M. FRIERSON
United States Attorney
Nevada Bar No. 7709
ANDREW KEENAN
Assistant United States Attorney
400 South Virginia, Suite 900
Reno, Nevada 89501
Phone: (775) 784-5438
Email: Andrew.Keenan@usdoj.gov
*Attorneys for the United States of America*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:24-cr-00014-HDM-CLB $-2$ |
| Plaintiff, | |
| v. | **Plea Agreement for Defendant Environmental Services Inc., DBA Easy Rooter Plumbing, Pursuant to Fed. R. Crim. P. 11(c)(1)(A) and (B)** |
| MATTHEW THURMAN; and ENVIRONMENTAL RESOURCES INC., DBA EASY ROOTER PLUMBING, | |
| Defendants. | |

This plea agreement between Environmental Resources Inc., DBA Easy Rooter Plumbing ("defendant"), the Environment and Natural Resources Division ("ENRD"), and the United States Attorney's Office for the District of Nevada ("USAO") sets forth the parties' agreement regarding the criminal charges referenced herein and the applicable sentences, fines, and special conditions of probation in the above-captioned case. This agreement binds only

defendant, ENRD, and the USAO, and does not bind the district court, the U.S. Probation Office, or any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities. This agreement does not prohibit ENRD or the USAO or any agency or third party from seeking any other civil or administrative remedies, including administrative forfeiture or civil forfeiture *in rem* actions, directly or indirectly against defendant or defendant's property.

This agreement becomes effective upon signature by defendant's representative, defendant's counsel, an ENRD prosecutor, and an Assistant United States Attorney.

### I. "GROUP PLEA DEAL"

1.      Defendant understands and agrees that this agreement is part of a "group plea deal" in which the disposition of the case against defendant is tied to and conditioned on the disposition of the case against the co-defendant, Matthew Thurman ("Thurman"), defendant's General Manager. Accordingly, defendant, ENRD, and the USAO agree that this agreement and the obligations it creates will not become binding on ENRD, the USAO, and defendant unless and until both: (a) defendant executes this agreement and enters a guilty plea in accordance with this agreement; and (b) Thurman executes his plea agreement with ENRD and the USAO and enters a guilty plea in accordance with that agreement. Defendant acknowledges that defendant has discussed with defendant's attorney, and carefully considered, the possible advantages and disadvantages to defendant of entering into this agreement as part of the group plea deal; defendant is entering into this agreement as part of the group plea deal freely and voluntarily because defendant believes this agreement and the group plea deal to be in defendant's best interests; and defendant is not entering into this agreement as part of the group plea deal because of threats, coercion, or other undue influence by ENRD, the USAO, or by the other defendant who is part of the group plea deal, its counsel, or anyone acting on its behalf.

## II. DEFENDANT'S OBLIGATIONS

2. Defendant, through its agent(s), agrees to:

a. Give up the right to indictment by a grand jury and, at the earliest opportunity requested by ENRD and the USAO and provided by the Court, appear and plead guilty to the one-count superseding information filed in this case, which charges defendant with knowing violation of a pretreatment standard in violation of the Clean Water Act, 33 U.S.C. §§ 1317(d) and 1319(c)(2)(A), 40 C.F.R. § 403.5(b)(8), and 18 U.S.C. § 2(b) (Count 1);

b. Stipulate to the facts agreed to in this agreement;

c. Abide by all agreements regarding sentencing contained in this agreement;

d. Not seek to withdraw defendant's guilty plea once it is entered;

e. Appear for all court appearances, obey all conditions of any bond, and obey any other ongoing court order in this matter;

f. Not commit any federal, state, or local crime;

g. Be truthful at all times with the U.S. Probation and Pretrial Services Offices and the Court;

h. Before and after sentencing, upon request by the Court, ENRD, the USAO, or the Probation Office, provide accurate and complete financial information, submit sworn statements, and/or give depositions under oath concerning defendant's assets and defendant's ability to pay. As part of the required disclosure, defendant agrees to provide any and all financial information and authorizations requested by the Probation Office for preparation of the Presentence Report. Defendant further agrees that, upon filing of this agreement, ENRD and the USAO are authorized to obtain defendant's credit report. Defendant will also complete a financial form provided by the USAO, to include all supporting documentation, and return it to ENRD and the USAO within three weeks from entry of the plea. Defendant agrees that the

3

district court may enter any order necessary to effectuate or facilitate disclosure of defendant's financial information.

   i.  To facilitate payment of any fine, restitution, or assessment, surrender assets defendant obtained directly or indirectly as a result of defendant's crimes. Defendant agrees to voluntarily release funds and property under defendant's control or in which defendant has any property interest, before and after sentencing, to pay any fine or restitution identified in this agreement, agreed to by the parties, or ordered by the Court.

## III. ENRD AND THE USAO'S OBLIGATIONS

3.  ENRD and the USAO agree to:

  a.  Stipulate to facts agreed to in this agreement;

  b.  Abide by all agreements regarding sentencing contained in this agreement; and

  c.  Not bring any additional charges against defendant arising out of the factual basis set forth in this agreement. However, the USAO reserves the right to prosecute defendant for (a) any crime of violence as defined by 18 U.S.C. § 16; and (b) any criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371). Defendant agrees that the district court at sentencing may consider any uncharged conduct in determining the applicable sentencing guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the sentencing guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

## IV. ELEMENTS OF THE OFFENSE

4.  <u>Count One</u>: The elements of the crime of knowingly violating a pretreatment standard under the Clean Water Act, 33 U.S.C. §§ 1317(d) and 1319(c)(2)(A), 40 C.F.R. § 403.5(b)(8), and 18 U.S.C. § 2(b), are as follows:

4

First:        A person who was the owner or operator of a source;

Second:       Operated the source;

Third:        In violation of a pretreatment standard established under the Clean Water Act;

Fourth:       After the effective date of that standard; and

Fifth:        Acted knowingly.

## V. CONSEQUENCES OF CONVICTION

5.    Maximum and Minimum Statutory Penalties: Defendant understands that the statutory maximum and minimum sentence the district court can impose for knowingly violating a Clean Water Act pretreatment standard, as charged in Count One, is: a term of probation of not less than 1 nor more than 5 years, a fine of not less than $5,000 nor more than $50,000 per day of violation, $500,000 per count, or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $400.

6.    Factors under 18 U.S.C. § 3553: Defendant understands that the district court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining defendant's sentence. However, the statutory maximum sentence and any statutory minimum sentence limit the district court's discretion in determining defendant's sentence.

7.    Potential Collateral Consequences of Conviction: Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and rights. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

# VI. FACTUAL BASIS

8. Defendant, through its agent(s), admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant acknowledges that if defendant elected to go to trial instead of pleading guilty, ENRD and the USAO could prove defendant's guilt beyond a reasonable doubt. Defendant further acknowledges that defendant's admissions and declarations of fact set forth below satisfy every element of the charged offense and that said facts establish that Thurman was defendant's agent, acting within the scope of his authority for the benefit of defendant in carrying out the charged offense. Defendant waives any potential future claim that the facts defendant admitted below are insufficient to satisfy the elements of the charged offense. Defendant admits and declares under penalty of perjury that the facts set forth below are true and correct:

a. The Clean Water Act prohibits the discharge of any pollutant into waters of the United States except in compliance with applicable regulations. 33 U.S.C. § 1311(a). The Clean Water Act regulates direct discharges to surface waters as well as discharges to sewer systems connected to publicly owned treatment works ("POTWs") that treat and manage wastewater before its discharge to waters of the United States. 33 U.S.C. § 1317(d). The United States Environmental Protection Agency ("EPA") was charged with developing standards, often called pretreatment standards, which regulate discharges to POTWs. 40 C.F.R. § 403. EPA has promulgated specific pretreatment standards that apply to all discharges to POTWs. Among other things, the regulations prohibit introducing into a POTW trucked or hauled pollutants except at discharge points designated by the POTW. 40 C.F.R. § 403.5(b)(8). This provision helps POTWs ensure that wastes are not introduced into their systems that those systems are unable to manage or treat.

b.     The term "pollutant" includes any solid waste, sewage, garbage, sewage sludge, and biological materials discharged into water. 33 U.S.C. § 1362(6).

c.     Fats, oils, grease, and solids ("FOGS") are the most common cause of reported blockages in POTWs. FOGS solidify, reduce conveyance capacity, and block flow, which is expensive to remedy and risks contaminating land, water, and drinking water. These expenses are passed on to consumers in their water bills. Accordingly, food service establishments, such as restaurants, are required to have grease interceptors or similar devices to collect FOGS from their wastewater before the wastewater enters the public sanitary sewer system.

d.     Typically, wastewater containing food service FOGS enters the grease interceptor via an inlet. Grease interceptors are typically two or three large-capacity tanks and use density differentials to separate FOGS from wastewater. Less dense FOGS float to the top of the tanks, while more dense material settles to the bottom of the tanks. As the tank fills, the grease interceptor traps the FOGS and allows the wastewater (without the FOGS) to enter the sewer system that serves the POTW. At the POTW, the wastewater is treated.

e.     Companies servicing grease interceptors use tanker trucks to suction the grease and wastewater out of the tanks and then haul it away for disposal at approved facilities, such as landfills.

f.     Food service establishments are required to have their grease interceptors serviced, including removing all FOGS and wastewater, at regular intervals.

g.     Thurman has been employed by Easy Rooter Plumbing since approximately 1988 and has been the General Manager of Easy Rooter Plumbing since approximately 2016.

h.     Easy Rooter Plumbing is a Nevada corporation based in Sparks, Nevada, that provided, as relevant here, restaurant waste removal services, including grease interceptor

7

servicing in and around Reno, Nevada. As General Manager, Thurman oversaw, supervised, managed, and controlled Easy Rooter Plumbing's grease interceptor servicing business. Thurman decided salary and compensation for Easy Rooter Plumbing employees, including himself.

i.    Easy Rooter Plumbing charged fees to remove FOGS and wastewater from food service establishments' grease interceptors.

j.    Beginning in at least March 2019 and continuing through August 26, 2021, in the District of Nevada, Thurman directed Easy Rooter Plumbing employees to illegally discharge FOGS and wastewater pumped from the grease interceptor(s) of one or more restaurants into the same or different restaurants' interceptors, causing FOGS and wastewater to be discharged into the Truckee Meadows Water Reclamation Facility ("TMWRF"), a POTW jointly owned and operated by the City of Reno, Nevada, and the City of Sparks, Nevada. These grease interceptors were not discharge points designated by the POTW. During this period, Thurman and Easy Rooter Plumbing repeatedly and illegally discharged grease and wastewater into the POTW on at least 68 days, usually several times each day. Thurman and Easy Rooter Plumbing did so to reduce the disposal costs for the grease and wastewater that Easy Rooter Plumbing would otherwise bear.

k.    Thurman caused Easy Rooter Plumbing to falsely invoice and charge client restaurants for grease interceptor servicing.

l.    In 2019, regulators initially discovered problems with the grease interceptor services that Easy Rooter Plumbing provided to various restaurants and, through undercover surveillance, witnessed Easy Rooter Plumbing illegally discharging grease and wastewater into TMWRF.

m.    In November 2019, representatives from TMWRF, Reno, and Sparks met with Thurman. They informed Thurman of the undercover surveillance revealing Easy Rooter Plumbing's illegal operations, reiterated the lawful process by which grease interceptors were to be serviced, reiterated how FOGS and wastewater were to be properly managed, and warned

Thurman that further illegalities would result in legal consequences. Thurman falsely denied any wrongdoing and accused a competitor of engaging in the illegal practices. Further surveillance of Easy Rooter Plumbing's employees and agents continued to show illegal discharges of FOGS and wastewater into POTWs.

n.      On August 26, 2021, Thurman was voluntarily interviewed and, having been informed of the nature of the investigation and that making false statements would be a crime, made statements Thurman knew to be false, including (i) that Thurman did not allow Easy Rooter Plumbing employees to engage in the illegal dumping, (ii) that Easy Rooter Plumbing employees only discharged FOGS and wastewater at approved disposal sites, (iii) that Thurman was unaware of the illegal discharges, and (iv) that Easy Rooter Plumbing employees did not falsely claim the removal of inflated quantities of grease and wastewater from restaurants to increase revenue.

o.      Thurman devised and implemented this criminal scheme to benefit himself and Easy Rooter Plumbing. During the August 2021 interview, Thurman stated to law enforcement that Easy Rooter Plumbing's business was failing, and these illegalities were necessary to keep the business operational. But during the criminal offense, Thurman chose to pay himself increasingly high compensation. Easy Rooter Plumbing paid Thurman a salary of $341,100 in 2019 and $379,039 in 2020. Easy Rooter Plumbing was on pace to pay Thurman a salary of $478,931 in 2021.

p.      Thurman and Easy Rooter Plumbing's criminal offense caused repetitive discharges of pollutants into the environment on at least 68 days.

q.      Thurman and Easy Rooter Plumbing's criminal offense involved the discharge of pollutants without a permit to do so.

r.      Neither Thurman nor Easy Rooter Plumbing paid any additional compensation to the Easy Rooter Plumbing employees who Thurman required to execute the

9

criminal scheme. Instead, Thurman and Easy Rooter Plumbing conditioned employment with Easy Rooter Plumbing on executing Thurman's criminal scheme.

## VI. SENTENCING FACTORS

9. <u>Discretionary Nature of Sentencing Guidelines</u>: Defendant understands that in determining defendant's sentence, the district court is required to calculate the applicable sentencing guidelines range and to consider that range, possible departures under the sentencing guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the sentencing guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated sentencing guidelines range, and that after considering the sentencing guidelines and the other § 3553(a) factors, the district court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and the maximum set by statute for the crime of conviction.

10. <u>Offense Level Calculations</u>: The parties jointly agree and stipulate that, in calculating defendant's advisory guidelines sentencing range, the Court should use U.S. Sentencing Guidelines Chapter 8 in determining the sentence to impose. The parties further agree and stipulate that §§ 8C2.2 through 8C2.9 of Chapter 8 do not apply to convictions under the Clean Water Act. The parties jointly agree to recommend a fine of $680,000, pursuant to USSG § 8C2.10, 18 U.S.C. § 3553, and 18 U.S.C. § 3572.

11. <u>Additional Sentencing Information</u>: The recommended sentence is based on information now known to the parties. Defendant understands that defendant, ENRD, and the USAO are free to (a) supplement the facts in this agreement by supplying relevant information to the U.S. Probation and Pretrial Services Offices and the district court regarding the nature, scope, and extent of defendant's criminal conduct and any aggravating or mitigating facts or circumstances; and (b) correct any and all factual misstatements relating to the district court's

determination of sentence. While this paragraph permits ENRD, the USAO, and defendant to submit full and complete factual information to the U.S. Probation and Pretrial Services Offices and the district court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's, ENRD's, and the USAO's obligations not to contest the facts agreed to in this agreement. Good faith efforts to provide truthful information or to correct factual misstatements shall not be grounds for defendant to withdraw defendant's guilty plea.

Defendant acknowledges that the U.S. Probation Office may calculate the criminal fine differently and may rely on additional information it obtains through its investigation. Defendant also acknowledges that the district court may rely on this and other additional information as it calculates the criminal fine and makes other sentencing determinations, and the district court's reliance on such information shall not be grounds for defendant to withdraw defendant's guilty plea.

## VII. POSITIONS REGARDING SENTENCING

2.     The parties will jointly recommend that the district court impose a sentence of probation of 3 years and a fine of $680,000 for which defendant will be solely liable, separate from any fine imposed upon co-defendant Thurman. In agreeing to this sentencing recommendation, the parties have taken into consideration all of the factors set forth in 18 U.S.C. § 3553(a) and conclude that the jointly recommended sentence is a reasonable sentence.

3.     Defendant acknowledges that the district court does not have to follow the recommendation of either party.

4.     Notwithstanding its agreement to recommend a sentence as described above, ENRD and the USAO reserve the right to defend any lawfully imposed sentence on appeal or in any post-conviction litigation.

11

## VIII. WAIVER OF CONSTITUTIONAL RIGHTS

5.    Defendant understands that by pleading guilty, defendant gives up the following rights:

    a.  The right to persist in a plea of not guilty;

    b.  The right to a speedy and public trial by jury;

    c.  The right to be represented by counsel—and if necessary have the court appoint counsel—at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel—and if necessary have the court appoint counsel—at every other stage of the proceeding;

    d.  The right to be presumed innocent and to have the burden of proof placed on the USAO to prove defendant guilty beyond a reasonable doubt;

    e.  The right to confront and cross-examine witnesses against defendant;

    f.  The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify; and

    g.  The right to pursue any affirmative defenses; Fourth Amendment or Fifth Amendment claims; any other pretrial motions that have been or could have been filed; and challenges to any adverse pre-trial rulings (unless specifically reserved in the following section).

## IX. WAIVER OF APPELLATE RIGHTS

6.    <u>Waiver of Appellate Rights</u>: Defendant, through its agent(s), knowingly and expressly waives: (a) the right to appeal the manner in which the district court determined that sentence on the grounds set forth in 18 U.S.C. § 3742; and (b) the right to appeal any other aspect of the conviction, including but not limited to the constitutionality of the statutes of conviction; any other aspect of the sentence, including but not limited to the constitutionality of

12

any special conditions of probation stipulated in this agreement; and any order of restitution or forfeiture.

7. Waiver of Post-Conviction Rights: Defendant, through its agent(s), also knowingly and expressly waives all collateral challenges, including any claims under 28 U.S.C. § 2255, to defendant's conviction, sentence, and the procedure by which the district court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel.

8. Preservation of Evidence: Defendant, through its agent(s), acknowledges that ENRD, the USAO, and the agencies investigating this case are not obligated or required to preserve any evidence obtained in the investigation of this case.

## X. RESULT OF WITHDRAWAL OF GUILTY PLEA OR VACATUR/REVERSAL/SET-ASIDE OF CONVICTION

9. Consequence of Withdrawal of Guilty Plea: Defendant, through its agent(s), agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this agreement was involuntary, then (a) ENRD and the USAO will be relieved of all of the obligations under this agreement and (b) should ENRD or the USAO choose to pursue any charge, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

10. Consequence of Vacatur, Reversal, or Set-aside: Defendant, through its agent(s), agrees that if defendant's conviction is vacated, reversed, or set aside, ENRD, the USAO, and defendant will be released from all their obligations under this agreement, except that, should ENRD and/or the USAO choose to pursue any charge that was either dismissed or not filed as a

13

result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### XI. BREACH OF AGREEMENT

11.     Defendant, through its agent(s), agrees that if, at any time after this agreement becomes effective, defendant knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), ENRD and/or the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for ENRD and/or the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of both ENRD and the USAO in writing. If ENRD or the USAO declares this agreement breached, and the district court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will remain bound by the provisions of this agreement and will not be able to withdraw the guilty plea; and (b) ENRD and the USAO will be relieved of all its obligations under this agreement.

### XII. COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

12.     Defendant understands that the Court and the U.S. Probation and Pretrial Services Office are not parties to this agreement and need not accept any of ENRD and the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

13.     Defendant understands that defendant, ENRD, and/or the USAO are free to argue on appeal and collateral review that the district court's sentencing guidelines calculations and the sentence it chooses to impose are not error.

14

14.    Defendant understands that even if the district court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to by the parties, or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one—not the prosecutor, defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## XIII. ADDITIONAL ACKNOWLEDGMENTS

15.    Defendant, through its agents(s), acknowledges that:

a.    Defendant has read this agreement and defendant understands its terms and conditions.

b.    Defendant had adequate time to discuss this case, the evidence, and this agreement with defendant's attorney.

c.    Defendant carefully and thoroughly discussed all terms of this agreement with defendant's attorney.

d.    Defendant understands the terms of this agreement and voluntarily agrees to those terms.

e.    Defendant has discussed with defendant's attorney the following: the evidence; defendant's rights; possible pretrial motions that might be filed; possible defenses that might be asserted either prior to or at trial; the sentencing factors set forth in 18 U.S.C. § 3553(a); the relevant sentencing guidelines provisions; and consequences of entering into this agreement.

f.    The representations contained in this agreement are true and correct, including the factual basis for defendant's offense set forth in this agreement.

15

g.    Defendant's agent(s) were not under the influence of any alcohol, drug, or medicine that would impair the ability to understand the agreement when defendant considered signing this agreement and when defendant signed it.

16.    Defendant understands that defendant alone decides whether to plead guilty or go to trial, and acknowledges that defendant has decided to enter defendant's guilty plea knowing of the charges brought against defendant, defendant's possible defenses, and the benefits and possible detriments of proceeding to trial.

17.    Defendant understands that no promises, understandings, or agreements other than those set forth in this agreement have been made or implied by defendant, defendant's attorney, ENRD or the USAO, and no additional promises, agreements, or conditions shall have any force or effect unless set forth in writing and signed by all parties or confirmed on the record before the district court.

18.    Defendant acknowledges that defendant decided to plead guilty voluntarily and that no one threatened, coerced, or forced defendant to enter into this agreement.

19.    Defendant is satisfied with the representation of defendant's attorney, and defendant is pleading guilty because defendant is guilty of the charges and chooses to take advantage of the promises set forth in this agreement and for no other reason.

//

//

//

//

//

//

//

## XIV. PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

20.     The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

ENVIRONMENT AND NATURAL RESOURCES DIVISION

TODD KIM
Assistant Attorney General

_____          8.15.24
MATTHEW D. EVANS                             Date
Assistant United States Attorney


UNITED STATES ATTORNEY'S OFFICE
FOR THE DISTRICT OF NEVADA

JASON M. FRIERSON
United States Attorney

_____          8/15/24
ANDREW KEENAN                                Date
Assistant United States Attorney


_____          8/15/24
MATTHEW THURMAN                              Date
Secretary and Corporate Officer of Defendant
ENVIRONMENTAL RESOURCES INC., DBA
EASY ROOTER PLUMBING

_____          8/1/2024
MARK VAN BAVEL                               Date
Attorney for Defendant ENVIRONMENTAL
RESOURCES INC., DBA EASY ROOTER
PLUMBING

SHAREN SMOCK                      17